# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **JEFFERY A. BROUSSARD** | * | **CIVIL ACTION NO.  14-0720**<br>**Section P** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **WARDEN IKE BROWN, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), are cross-motions for summary judgment filed by plaintiff pro se Jeffery Broussard [doc. # 154] and defendants, Warden Ike Brown, Billy Harrison, Sgt. Holmes, and Samuel Lacy [doc. # 156].  For reasons explained below, it is recommended that defendants' motion for summary judgment [doc. # 156] be GRANTED, and that plaintiff's motion for summary judgment [doc. # 154] be DENIED.

## Background

Pro se plaintiff Jeffery A. Broussard, who is proceeding in forma pauperis in this matter, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on March 28, 2014. Broussard is an inmate in the custody of the Louisiana Department of Corrections, presently incarcerated at the Louisiana State Penitentiary, Angola.[1]  Broussard complains that he was the

---

[1]  On, or about September 5, 2013, Broussard received a sentence of 40 years at hard labor on four counts of armed robbery, plus 20 more years for conspiracy to commit same.  *See State v. Broussard*, 149 So.3d 446 (La. App. 2d Cir. 2014), *writ denied*, 184 So.3d 702 (La. 1/15/16).

victim of excessive force perpetrated by corrections and law enforcement officials while a pre-trial detainee housed at the Morehouse Parish Detention Center ("MPDC") and the Morehouse Parish Jail ("MPJ").  He sued the officials – Warden Ike Brown, Billy Harrison, Samuel Lacy, Sergeant Holmes, and Sergeant Smith (along with Henry Bates) praying for compensatory damages in the amount of $350,000, which he later increased, via amended complaint(s), to $2,000,000 each, plus $500,000 in punitive damages against each defendant.  *See* doc. # 54.

## I.      The Prior Suit

Broussard commenced an earlier civil rights complaint before this court on November 7, 2011.  At that time, he was a pre-trial detainee residing at the MPJ.  *Broussard v. Robinson*, Civ. Action No. 11-2006 (W.D. La.) ("*Broussard I*").  In *Broussard I*, he sued MPJ Warden Billy Harrison, Sgt. Tommy Cooper, Sheriff Mike Tubbs, Assistant District Attorney Steve Sylvester, and Officer Robinson requesting dismissal of his then-pending felony charges and placement in the federal witness protection program (along with his fiancée), plus compensatory damages for threats on his life made by various corrections officers at the MPJ.  He further complained that on July 28, 2011, and again on November 26, 2011, unnamed corrections officers attempted, but failed to cause him severe physical injury or death.

On December 25, 2011, Broussard sent a missive to the court wherein he explained that, on November 29, 2011, the Honorable Wendell Manning of the 4th Judicial District Court for the Parish of Ouachita ordered him transferred to the MPDC for his safety.  [doc. # 10 in Civ. Action No. 11-2006].  According to Broussard, however, the transfer only served to increase his peril. Prior to his transfer, Broussard stated that he had been confined to MPJ's lock down for 138 days, together with 105 days in protective custody status.  Broussard alleged that Morehouse

Parish authorities were retaliating against him for filing the lawsuit by threatening severe

physical injury or death.  In fact, he claimed to have overheard MPDC's Assistant Warden Fife

and others plotting his murder possibly to be carried out in the middle of the night.  He also

claimed to have taken only three showers in a four week period because he knew that Assistant

Warden Fife was plotting his murder in the showers.  Broussard reiterated that he was in serious

danger of severe physical injury or death at the MPDC because the people who worked there

were friends and colleagues of MPJ Warden Bill Harrison.  He pleaded for emergency assistance

and a transfer out of Morehouse Parish or the issuance of a federal protection order.

On January 11, 2012, the undersigned recommended dismissal of *Broussard I* as

frivolous.  Plaintiff did not object and on February 27, 2012, the District Court adopted the

recommendation, dismissing plaintiff's complaint, with prejudice, as frivolous and for failure to

state a claim for which relief may be granted.  *See Broussard, I.*  Plaintiff did not appeal the

dismissal or, for that matter, file anything else in *Broussard I.*

## II.     The Current Suit

Over two years later, Broussard commenced the instant suit, which rehashes some of the

allegations of *Broussard I*, and adds facts and claims from his time at the MPDC beginning in

2012 and extending to no later than September 23, 2013, when he was transferred out of

Morehouse Parish to begin serving his sentence.  Over the years, plaintiff has amended his

complaint at least five times [doc. # 11, 17, 18, 20, & 54] and filed numerous declarations made

under penalty of perjury.

Pursuant to the court's initial review under 28 U.S.C. §§ 1915A & 1915(e)(2), the

undersigned recommended dismissal of plaintiff's suit as time-barred.  *See* April 30, 2014, R&R

3

[doc. # 13].  In response to the report and recommendation, plaintiff filed an objection, one declaration, and at least two amended complaints.  [doc. #s 17-21].  Nonetheless, the District Court adopted the report and recommendation, agreeing that plaintiff was not entitled to equitable tolling, despite his allegations that he was too afraid to file suit while still housed at the MPDC.  (June 17, 2014, Ruling & Judg. [doc. #s 24 & 25]).

Plaintiff appealed the dismissal to the Fifth Circuit, which vacated the judgment and remanded the case for further proceedings.  (Apr. 8, 2015, Judgment [doc. # 48]).  In so doing, the court noted that the district court did not address plaintiff's argument for equitable tolling under Louisiana law (as opposed to federal law), nor did the court consider Broussard's continuing tort argument which could have rendered his denial of medical care claim timely.  *Id.*

Accordingly, upon remand, the court ordered service on defendants and granted plaintiff leave to file another amended complaint.  [doc. #s 52-54].  On July 23, 2015, defendants, Warden Ike Brown, Billy Harrison, and Sgt. Holmes, filed an answer to the complaint, as amended.  [doc. # 64].[2]  Discovery ensued.  At the conclusion of discovery, plaintiff filed the instant motion for summary judgment on May 17, 2016, as to the liability of defendants, Ike Brown, Billy Harrison, Samuel Lacy, Sergeant Holmes, and Sergeant Smith.  On May 20, 2016, defendants, Ike Brown, Billy Harrison, Sergeant Holmes, and Samuel Lacy, filed their own motion for summary judgment seeking dismissal of plaintiff's suit on grounds that it was not timely filed, that the claims against Harrison are precluded by res judicata, and because plaintiff failed to exhaust available administrative remedies before filing suit.  Following delays for supplemental briefing,

---

[2]  Service was not perfected on defendant, Samuel Lacy, until later.  He filed his answer on February 25, 2016.  [doc. # 118].

4

the matter is ripe.

## Summary Judgment Principles

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*.

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "The court *need* consider only the cited materials, but it *may* consider other materials in the

record." Fed.R.Civ.P. 56(c)(3) (emphasis added).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.

Nevertheless, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007).  Furthermore, "[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769; *see also Anderson,* 477 U.S. at 248 (summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party).

Finally, when a movant bears the burden of proof on an issue, it must establish "beyond peradventure[3] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In other words, the movant must affirmatively establish its right to prevail as a matter of law.  *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

---

[3] I.e., beyond doubt.

**<u>Plaintiff's Allegations</u>**

The instant record is overflowing with numerous, repetitive submissions and declarations made by plaintiff under penalty of perjury.  From what the court may discern from this jumble of pleadings and allegations is that the source of plaintiff's troubles is traceable to June 2011 when he provided a statement against his co-defendant, Henry Bates, for purposes of their state criminal case.  According to plaintiff, this caused Bates to issue a "hit" on him unless he recanted his statement.  To effect his plan, Bates enlisted the assistance of MPJ Warden Billy Harrison.  Broussard alleges that in mid-November 2011, he was attacked in his cell in the middle of the night, while in segregated lock down/protective custody.  Plaintiff conveyed his concerns to 4th Judicial District Judge Manning who, following a November 29, 2011, hearing on the matter, ordered plaintiff transferred to the MPDC in response to Broussard's safety concerns.

At the MPDC, plaintiff came under the jurisdiction of Warden Ike Brown, who, per plaintiff, was a longtime colleague of MPJ Warden Billy Harrison.  After his arrival at the MPDC, various officers, including Sergeant Smith, Sergeant Holmes, and Officer Lacy confirmed that the "hit" and associated bounty on Broussard's life had followed him to the MPDC, where it had increased to $10,000.  Moreover, Warden Brown had possession of the bounty money, and the officers were eager to earn it.

In the early morning hours of January 22, 2012, Sergeant Smith and two officers entered Broussard's cell, sprayed him with pepper spray, and then physically attacked him.  Broussard believes that Sergeant Smith ceased his attack only because the other inmates could hear Broussard screaming for his life.

After the attack, Broussard washed his face in the toilet and came to the realization that

7

he was not protected at the MPDC.  He became extremely fearful for his life, and knew that it was only a matter of time before another attack occurred.  Accordingly, Broussard resolved to escape the prison in a desperate bid to save his life.  On the morning of January 23, 2012, after a struggle with one or more officers, Broussard managed to make his way outdoors where he attempted to scale a fence.  However, Officer Lacy grabbed Broussard's right ankle and pulled him 12 feet to the ground, where he landed on his left knee, causing extreme pain.  Moreover, Officer Lacy and Sergeant Holmes proceeded to attack and beat Broussard before dragging him to the nurse's office.  Plaintiff contends that because he landed on his *left* knee, but later required surgery on his *right* knee, this circumstance necessarily establishes that defendants employed excessive force after taking him into custody.

Upon his arrival at the nurse's office, Warden Brown instructed Sergeant Holmes and Officer Lacy to return to their duties.  While the nurse was away, and with plaintiff lying on the floor, in restraints, Brown began to kick Broussard in the stomach, stomp on his back, and repeatedly strike him in the face.  Brown noticed that Broussard's right leg was more seriously injured than his left; thus, he focused his attack on that limb, inflicting excruciating pain.  Ultimately, plaintiff suffered a bicondylar tibial plateau fracture with lateral split depression to his right knee, which resulted in permanent physical disability.

Warden Brown refused Broussard medical treatment and humiliated him by forcing him to crawl naked from the nurse's office back to his cell.  Warden Brown then had everything stripped from Broussard's cell, leaving nothing except iron and concrete, despite the freezing temperatures.  He also confiscated all of Broussard's property and falsified plaintiff's suicide status.

8

Plaintiff alleges that Warden Brown intentionally used excessive physical force to maliciously inflict extreme pain and torture upon him.  He also refused to permit the nurse to provide Broussard with any pain medication, and even prohibited the medical department from issuing crutches to Broussard.

Broussard further contends that MPJ Warden Harrison and MPDC Warden Brown both utilized "confiscation tactics" to deny him access to the courts in a conspiracy to commit murder to ensure that Henry Bates did not go to prison.  On January 23, 2012, Warden Brown destroyed all of Broussard's personal and legal documents, and permanently canceled his mailing privileges in violation of Broussard's rights under the First Amendment.

On January 24, 2012, Warden Brown went to Broussard's cell and ordered him to stand up and dress himself, despite Broussard's right leg injury.  While Broussard was attempting to comply, Brown became extremely angry and attacked him again, focusing on the severely injured right leg.  Brown then forced Broussard to hop on his left leg to a waiting car, which transported him to the 4th JDC courthouse for his initial appearance on charges of aggravated escape and aggravated battery.  Broussard was in so much pain at the courthouse that a court officer had to carry him up the courthouse steps, and then wheel him about in an office chair.

Broussard further alleges that he remained naked in punitive, stripped cell confinement under a fabricated suicide status for a period of ten days before undergoing surgery on his right leg.  Although the orthopedist later instructed Broussard to remain on crutches or a walker for three months following surgery, Warden Brown immediately confiscated the crutches upon Broussard's return to the facility.

Plaintiff alleges that he was physically attacked once by inmates while in the custody of

Warden Harrison.  Thereafter, he was physically attacked "four" times while in the custody of Warden Brown:  on January 22, 2012, by Sergeant Smith; on January 23, 2012, by Officer Lacy and Sergeant Holmes; and on January 23 and 24, 2012, by Warden Brown.

Broussard further alleges that Warden Harrison placed him in punitive administrative segregation for four months from July 28, 2011, until November 29, 2011.  Warden Brown then placed him in punitive, stripped cell confinement under a fabricated suicide status, completely naked, for a total of "23" months from January 23, 2012, through September 23, 2013.[4]

Plaintiff alleges that during his punitive, stripped cell confinement, he was subjected to food deprivation, sleep deprivation, extremely cold temperatures while naked, 24 hour per day lighting, no recreation, very little to no toilet paper, and unsanitary conditions of confinement. Moreover, his visitation privileges were canceled permanently, all of his incoming and outgoing mail was confiscated, and he was not allowed to receive any legal mail or material even from his attorney.  All of his legal and writing material was confiscated permanently, and he was prevented from interacting with other inmates, his family, and the court.  He was allowed to brush his teeth only once every 15-20 days, or when Warden Brown decided to permit him to clean up.  To further humiliate Broussard, Warden Brown would enter his cell and require him to submit to rectum inspections.  While at the MPDC, Broussard suffered from constant fear, anxiety, severe mental anguish, and debilitating stress.  His suffered, and continues to suffer

_____

[4]  According to plaintiff, Nurse Harris tried to get him off of suicide watch.  However, Warden Brown provided her with an unsigned memorandum purportedly from Judge Manning instructing Brown to place Broussard on suicide watch.  Plaintiff stated that his attorney asked Judge Manning to take him off of suicide watch, but Manning declined to do so because he did not place him on suicide watch.  Plaintiff thus concludes that Warden Brown fabricated the unsigned memorandum from Judge Manning to justify his placement in isolation for nineteen months.

horrific nightmares.

Broussard contends that Brown's actions violated his rights to access the courts, counsel, due process, and equal protection under the First, Sixth, and Fourteenth Amendments to the U.S. Constitution.

## Analysis

### I.     Plaintiff Failed to Exhaust Available Administrative Remedies

   a)     Law

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the administrative process.  *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted).  All "available" remedies must be exhausted, whether speedy and effective, or not.  *Porter v. Nussle*,  534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules."  *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. 2009) (citing *Woodford, supra*).  An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement.  *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter, supra* (citation omitted).[5]  An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted).  In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities.  *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. 2003).

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance.  *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir. 2007) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954 (5th Cir. 2009) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561 (5th Cir. 2010) (citation omitted).  Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances."  *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010) (citations omitted).  When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable.  *Id.*  "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility."  *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir.2008)).  Stated another way, the grievance filing period is tolled only so long as the inmate is actually impeded from invoking and exhausting the process.

---

[5] The exhaustion requirement applies to a denial of access to court claim.  *See Smith v. Dretke*, 215 Fed. Appx. 358, 359 (5th Cir.2007)

A prisoner is required to exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process.  *Hicks v. Lingle*, 370 F. Appx. 497, 499 (5th Cir. 2010); *Ates v. St. Tammany Parish*, Civ. Action No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014).  Moreover, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all "available" steps.  *Ates, supra* (and cases cited therein); *see also Hicks, supra* (inmate required to proceed to second step even though procedure said only that inmate "may appeal" if dissatisfied with first step response).  In short, the courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, n. 6 (2001).

"[E]xhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time . . ." Dillon, 596 F.3d at 272.  Furthermore, exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies.  *Dillon*, 596 F.3d at 266.  If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56.  *Id*.

b)      The MPDC and the MPJ had an Available Administrative Remedy Procedure

The uncontroverted evidence establishes that the MPDC and the MPJ had an identical three step Administrative Remedy Procedure ("ARP") in effect during the relevant period. (Declaration of Warden Carl Patrick and the Morehouse Parish Corr. Div. Grievance Process; Defs. MSJ, Exhs. A & A-1).  The first step of the ARP requires an offender to submit a grievance form to the assistant warden by handing it to an employee or correctional officer within 30 days

after the incident.  *Id*.  The step one respondent will respond to the offender within 15 days from the date that the step one respondent receives the completed grievance.  *Id*.

An offender who is not satisfied with the response to the step one grievance may request a review by the assistant warden by signing the bottom of the grievance form and handing it to an employee or correctional officer within five days of the offender's receipt of the step one response.  *Id*.  The assistant warden will ensure that the offender receives a written review decision within 25 days after receipt of the request for step two review.  *Id*.

An offender who is not satisfied with the step two review may appeal to the *sheriff* by signing the bottom of the assistant warden's review decision, and handing it to an employee or correctional officer within five days of receipt of same.  *Id*.  The *warden* will issue a final decision within 40 days after receipt of the appeal.  *Id*.

All grievances must be processed within 90 days from beginning to end.  *Id*.

c)      Broussard Failed to Exhaust All Available Administrative Remedies

In support of their motion for summary judgment, defendants adduced evidence that Warden Brown never received a step three grievance from plaintiff.  (Decl. of Ike Brown; Def. Opp. Memo., Exh. [doc. # 161-2]).  Furthermore, there is no evidence of plaintiff's having ever filed a grievance at any step of the ARP process following his transfer to the MPJ in October 2012,[6] or even after his transfer to the Hunt correctional center in September 2013, despite the fact that the grievance process is explained to all inmates at the MPJ.  (Decl. of Warden Carl Patrick).

In his original complaint, plaintiff confirmed that he did not file a grievance regarding the

_____

[6]  *See* discussion, *infra*.

14

facts that formed the basis for this lawsuit because he feared retaliation.  *See* Compl.[7]  If so, however, plaintiff was obliged to exhaust the grievance process once his impediment to doing so was removed, i.e., after his transfer to the MPJ in October 2012, or to the Hunt correctional center in September 2013.  *See Dillon, supra*.  There is no evidence that he ever did.  *Nottingham v. Richardson*, 499 Fed. Appx. 368, 375 (5th Cir.2012) (no evidence that plaintiff could not have filed grievances once he was transferred to a new facility).  Accordingly, the court finds that plaintiff failed to exhaust all three steps of the MPDC/MPJ's available grievance process.

d)    Remedy for Failure to Exhaust

The plain language of the PLRA precludes any further action on plaintiff's claims until he has fully exhausted the administrative remedy procedure.  *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998) (§ 1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than while the action is pending . . . [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.").

However, the court may reach the merits of the complaint notwithstanding plaintiff's failure to exhaust when, as here,

the only issue presented to the court is a clearly focused § 1983 constitutional

---

[7]  Plaintiff later stated that he wrote several administrative grievances that were confiscated and destroyed by Warden Brown on January 23, 2012.  He also stated that he filed an administrative grievance with Sheriff Tubbs regarding the threats made by Warden Harrison. However, if these grievances were destroyed on January 23, 2012, they must have pertained to conduct that occurred some time before that date – i.e., conduct that does not form the basis of the instant suit.  In any event, there is no evidence that plaintiff endeavored to exhaust all three steps of the process.

claim, where the state [sought] judgment on the merits (in addition to invoking PLRA exhaustion), where the parties engaged in discovery, and where the purposes of PLRA exhaustion would be confounded by requiring administrative exhaustion at this stage . . .

*Thorson v. Epps*, 701 F.3d 444, 446 (5th Cir. 2012).

Furthermore, dismissal, at this stage, for failure to exhaust is effectively a dismissal with prejudice because of Broussard's failure to timely invoke the grievance process.  Accordingly, the undersigned will proceed to the merits of plaintiff's complaint.

## II.     Plaintiff's Claims against Harrison are Barred by Res Judicata

Without actually mentioning res judicata, defendants contend that plaintiff's claims against Billy Harrison are subject to dismissal because this court previously dismissed the same claims asserted against Harrison in *Broussard I*.[8]

The court observes that the doctrine of res judicata encompasses two separate, but linked preclusive doctrines:  "(1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion."  *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466-67 (5th Cir. 2013) (citations omitted).  True res judicata "has four elements:  (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."  *Id*.

The foregoing elements are easily satisfied here:  1) Broussard and Harrison were/are both parties to *Broussard I* and the instant suit; 2) this court enjoyed jurisdiction in *Broussard I*;

---

[8]  Generally, res judicata is an affirmative defense that must be pleaded by the defendant, not raised *sua sponte*.  *Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 281-82 (5th Cir. 2001).  One exception to the foregoing principle, however, is when, as here, both actions were brought before the same court.  *Id*.

3) *Broussard I* was concluded by final judgment on the merits;[9] and 4) the facts set forth against

Harrison here are the same facts that formed the basis for *Broussard I*.  Accordingly, plaintiff's

claims against Harrison are barred by res judicata.

## III.    Plaintiff's Claims are Time Barred

a)      <u>Law</u>

Statutes of limitations serve as absolute bars to suit.  *Nottingham*, 499 Fed. Appx. at 375.

However, there is no federal statute of limitations for actions brought pursuant to 42 U.S.C. §

1983.  *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992).  Therefore, the courts must borrow

the forum state's limitations period for personal injuries, including the state's provisions on

tolling – so long as application of the rules does not undermine the goals of the federal statute at

issue.  *Id*. (citations omitted); *Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 2000 (1989)

(citation omitted).

In Louisiana, delictual actions are subject to a liberative prescription period of one year.

La. Civ. Code Art. 3492.  The Louisiana Civil Code provides that prescription runs against all

persons, including absent persons and incompetents, unless an exception is established by

legislation.  La. Civ. Code Art. 3467-3468.  Louisiana recognizes three potential avenues to

retard the running of prescription:  suspension, interruption and renunciation.  *Bouterie v. Crane*,

616 So. 2d 657, 660 (La. 1993).  Longstanding Louisiana jurisprudence recognizes a limited

suspensive exception founded on the ancient civilian doctrine of *Contra non valentem agere*

*nulla currit praescriptio* where "in fact and for good cause a plaintiff is unable to exercise his

---

[9]  The court's judgment in *Broussard I* disposed of all claims and parties, and has not been modified on appeal.  Thus, it is considered a final judgment for purposes of res judicata. *Comer*, 718 F.3d at 468.

cause of action when it accrues."  *Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319,

1321 (La. 1979) (citations omitted).  Typically,

> the doctrine of *contra non valentem* suspends prescription where the circumstances of the case fall into one of the following four categories:
>
> 1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> 2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> 3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
>
> 4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).

Plaintiff's argument that the MPDC confiscated all of his writing materials and that he

feared for his life if he filed suit most closely tracks *contra non valentem's* third category.  This

exception, however, is limited to circumstances where the defendant *himself* prevented plaintiff

from filing suit.  *Armstrong v. Serpas*, Civ. Action No. 15-808, 2015 WL 5061284, at *3-4 (E.D.

La. Aug. 26, 2015) (citations omitted).  Confinement alone does not suffice to suspend

prescription via *contra non valentem*.  *McGuire v. Larpenter*, 592 F. App'x 272, 275 (5th Cir.

2014) (citing *Jackson v. Jefferson Par. Clerk of Court*, 981 So. 2d 156, 161 (La. App. 5th Cir.),

*writ denied*,  993 So. 2d 219 (La. 2008)); *see also Stephens v. Shimpf*, 312 F. App'x 676, 677 (5th

Cir. 2009) (citing *Kissinger v. Foti*, 544 F.2d 1257, 1258 (5th Cir.1977)).

Although state law governs the limitations period and tolling exceptions, federal law

determines when a cause of action arises.  *Jackson, supra* (citation omitted).  "A cause of action

under § 1983 accrues when the aggrieved party knows, or has reason to know of, the injury or

damages which form the basis of the action." *Ramon v. Rodriguez-Mendoza*, 372 Fed. Appx. 494 (5th Cir. April 1, 2010) (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir.1995)).  Furthermore, the continuing-tort doctrine is one of accrual and thus a question of federal law. *Nottingham*, 499 Fed. Appx. at 375 (citation omitted).  "When a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases." *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir.1974), *vacated*, 422 U.S. 563, 95 S.Ct. 2486, and *vacated sub nom. Gumanis v. Donaldson*, 422 U.S. 1052, 95 S.Ct. 2673 (1975); *see also Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir.1980).

     b)    <u>Discussion</u>

Defendants adduced evidence that Broussard was transferred from the MPDC to the MPJ on October 2, 2012.  (Decl. of Warden Carl Patrick; Def. MSJ, Exh. A).  In addition, since January 2012, Carl Patrick has been the warden at the MPJ; thus, Billy Harrison no longer served as the warden at the MPJ when plaintiff was transferred there in October 2012. *Id*.  Warden Patrick's declaration is consistent with an October 2, 2012, Interoffice Memo that he sent to "All Staff," stating that Broussard was to be housed in lock down on suicide watch until released by the court.  (Notice of Compliance [doc. # 65-3, pg. 16]).  Warden Patrick instructed all staff to use extreme caution around Broussard because he was the same inmate who had placed a blade to an officer's throat to escape from Collinston, i.e., the MPDC. *Id*.  Patrick signed the memorandum as "Warden, Morehouse Parish Jail/Annex." *Id*.

In contrast, plaintiff alleges that he remained at the MPDC until June 26, 2013, when he was transferred temporarily to the MPJ for a little over two months before returning to the MPDC on September 5, 2013, for approximately 18 days while he awaited transfer to the Hunt

correctional center, and then on to Angola.[10]  In addition to his own declaration(s), plaintiff relies on a Department of Corrections printout, which shows that he was in the "Monroe District" as of June 26, 2013.  *See e.g.*, Pl. Exh. 9(B) [doc. # 20-2, pg. 2]).  However, the printout does not specify what is meant by the "Monroe District."  Moreover, it does not address plaintiff's whereabouts prior to June 26, 2013.

Plaintiff contends that the MPJ and MPDC used some forms interchangeably, and therefore, the forms do not provide a reliable basis for ascertaining the facility where plaintiff was housed on any specified date.  The court agrees that the MPDC appears to use inmate request forms and sick call request forms that have "Morehouse Parish Jail" pre-printed on the top of the forms, and vice versa.  *See e.g.,* doc. # 65-2, pgs. 5, 8.

On the other hand, forms completed by facility medical staff consistently support Warden Patrick's declaration that Broussard was transferred to the MPJ as of October 2, 2012.  For instance, medication order forms dated October 12 and December 20, 2012, reflect that they were transmitted from the MPJ at "250 East Walnut Avenue, Bastrop, La."   [doc. #s 65-2, pg. 28, 65-4, pg. 15].  Other forms captioned, "Morehouse Parish Jail," commemorate that Broussard was seen by physicians on November 28 and December 20, 2012, at that facility.  [doc. #s 65-2, pg. 30, 65-4, pg. 19].[11]

Finally, plaintiff adduced a copy of a Nurse's Note that has "Morehouse Parish Jail" and

---

[10]  Plaintiff's medical records confirm that he was "released" or transferred from the MPJ on September 5, 2013.  [doc. # 65-3, pg. 17].

[11]  Consistent with plaintiff's temporary transfer back to the MPDC in September 2013, are medication order forms dated September 17 and September 18, 2013, which are stamped "Collinston, LA," where the MPDC is located.  [doc. #s 65-2, pg. 27 and 65-3, pg. 18].

Broussard's name in the heading, along with a date of November 13, 2012.  (Pl. Exh. # 119, [doc. # 162-3, pg. 1].[12]  The heading and the body of the note are all typed in the same font, and thus, appear to have been manually entered via word processor.  *Id*.  The nurse observed that Broussard's cell was tidy with stacks of paper lined up across the floor and upper bunk.  *Id*. Broussard was "inside the mattress cover."  *Id*.  Moreover, his hygiene was within normal limits, aside from needing a shave and a haircut.  *Id*.  Broussard told the nurse that he usually received a new suicide gown every two to three days.  *Id*.  He had no complaints.  *Id*.

The court recognizes that plaintiff has submitted declarations stating that he remained at the MPDC until September 2013.  Ordinarily, this evidence would create a genuine dispute of material fact sufficient to preclude summary judgment as to this issue.  In this case, however, plaintiff also submitted a copy of a March 15, 2012, psychological evaluation administered by James Pinkston, Ph.D., in which the psychologist noted that Broussard exhibited paranoid delusions of persecution by the police.  (Psych. Evaluation; Pl. MSJ, Exh. # 60, [doc. # 154-2, pgs. 55-61]).  Dr. Pinkston further observed that "[a]s a result of his delusional belief system, Mr. Broussard manifests difficulty accurately recalling and relating facts pertaining to his actions and whereabout at certain times."  *Id*.[13]

---

[12]  The note also appears in plaintiff's medical file.  [doc. # 65-4, pg. 14].  Although plaintiff submitted the note in support of his motion for summary judgment, he later disavowed it as a "complete fabrication."  [doc. # 162-1].

[13]  Plaintiff also adduced a psychiatric note dated October 17, 2013, from Chris Lartigue, M.D., who examined plaintiff shortly after his arrival at Angola.  (Psych. Notes; Pl. MSJ, Exh. # 60, [doc. # 154-5, pg. 7]).  Plaintiff advised the physician that he had not heard voices within the last two weeks.  *Id*.  He further complained that he still had nightmares of Warden Brown trying to kill him.  *Id*.  Dr. Lartigue diagnosed "psychosis NOS; PTSD vs. part of delusional system." *Id*.

In light of the objective medical evidence indicating that plaintiff's perception of reality is altered, including his ability to accurately recall facts, together with the clear contradictory evidence presented by defendants, the court finds that this is the rare case where a party's version of events is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." *McKnight v. Madison Par. Sch. Bd.*, Civ. Action No. 07-0030, 2009 WL 1409853, at *7 (W.D. La. May 20, 2009) (citing *Scott,* 550 U.S. at 380).  Consequently, the court is compelled to find that the uncontroverted competent summary judgment evidence establishes that plaintiff was transferred from the MPDC to the MPJ on October 2, 2012, where he remained until September 5, 2013, when he was transferred back to the MPDC for a period of 18 days, before being transferred to other DOC facilities.

The court further finds that plaintiff's claims against defendants accrued no later than October 2, 2012.  Plaintiff's claims of excessive force and gratuitous beatings all occurred prior to that date.  His claims for inadequate medical care all accrued when he received medical attention during his confinement at the MPDC, and/or immediately after his transfer.  *See* Medical Records [doc. # 65] (replete with examinations by physicians, surgery, and all but daily administration of medications).  Similarly, his conditions of confinement claim and denial of access to court claim against the named defendants all ripened no later than the date that he was transferred out of the MPDC and their custody.[14]

The court further finds that *contra non valentem* does not suspend the running of prescription in this case.  As stated earlier, *contra non valentem's* third exception, is limited to

---

[14]  There are no allegations of renewed wrongdoing by defendants during plaintiff's brief 18 day return to the MPDC in September 2013.

circumstances where the defendant *himself* prevented plaintiff from filing suit.  *Armstrong, supra*

(citations omitted).  Once plaintiff was transferred to the MPJ on October 2, 2012, he no longer

was in the custody of the named defendants, and thus, they could not prevent him from filing

suit.  Furthermore, although plaintiff claimed that he did not have access to writing materials and

that he feared retaliation if he filed suit, his statements are belied by correspondence that he sent

to his attorney in August and September 2012, as well as to his psychiatrist in November 2012.

(Pl. MSJ, Exhs. 53 & 56 [doc. # 154-1, pgs. 36-43).  Finally, nurse's notes from November 13,

2012, document that plaintiff had stacks of paper all over his cell.  (Pl. Exh. # 119, [doc. # 162-3,

pg. 1]).

        In sum, the court finds that plaintiff had one year from October 2, 2012, or until October

2, 2013, in which to commence the instant suit.  La. Civ. Code Art. 3492.  However, he did not

file suit until March 28, 2014.  Therefore, his suit is untimely, and subject to dismissal on that

basis.

## IV.    Sgt. Smith and Henry Bates

        Defendants, Sgt. Smith and Henry Bates, did not join in the present motion – no doubt, at

minimum, because they were never served.  Nonetheless, they are entitled to summary judgment

on the same basis as the moving defendants.[15]  *Lewis v. Lynn*, 236 F.3d 766, 768, 236 F.3d 766

(5th Cir. 2001) (where defending party establishes that plaintiff has no cause of action, the

defense generally inures to the benefit of a non-appearing co-defendant).[16]

---

        [15]  Albeit, plaintiff need not exhaust administrative remedies before pursuing his claim against Bates.

        [16]  The court may grant summary judgment *sua sponte* so long as the adverse party receives adequate notice and a reasonable time to respond.  Fed.R.Civ.P. 56(f)(1); *Stingley v.*

**<u>Conclusion</u>**

The court finds that there is no genuine dispute as to any material fact and that movants, plus Sgt. Smith, and Henry Bates, are entitled to judgment as a matter of law dismissing plaintiff's claims against them as untimely, barred by res judicata, and/or for failure to exhaust administrative remedies. Fed.R.Civ.P. 56(a); *Teixeira v. Gregg Cnty. Jail*, 74 F. App'x 388, 389 (5th Cir. 2003).

For the above-stated reasons,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 156] filed by defendants, Warden Ike Brown, Billy Harrison, Sgt. Holmes, and Samuel Lacy be GRANTED, and that judgment be entered in favor of said defendants, plus Sgt. Smith and Henry Bates, DISMISSING, with prejudice, plaintiff's claims in their entirety.

IT IS FURTHER RECOMMENDED that plaintiff's motion for summary judgment [doc. # 154] be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

---

*Den Mar Inc.*, 2009 WL 2762374, *3 (5th Cir. Sept. 1, 2009) (unpubl.) (citing *inter alia*, *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770-71 (5th Cir.2000)). The instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir.1998)).

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 3rd day of October 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE